STUBBS ALDERTON & MARKILES, LLP
Jeffrey F. Gersh (SBN 87124)
jgersh@stubbsalderton.com
James A. Sedivy (SBN 102870)
jsedivy@stubbsalderton.com
15260 Ventura Blvd., 20th Floor
Sherman Oaks, California 91403
Telephone: (818) 444-4500
Facsimile: (818) 444-4520

Attorneys for Plaintiffs
EUROPLAY CAPITAL ADVISORS, LLC
And MARK DYNE

FILED
MAR 06 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE

CV-18 80044 MISC SVK

| | |
|---|---|
| EUROPLAY CAPITAL ADVISORS, LLC, a Delaware limited liability company; MARK DYNE, an individual, <br><br> Plaintiffs <br><br> v. <br><br> DOES 1 through 10, inclusive <br><br> Defendants | Case No. <br><br> Central District of California Case No.: 2:17-cv-02856-CAS-ASx <br><br> **PLAINTIFFS EUROPLAY CAPITAL ADVISORS, LLC AND MARK DYNE'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER COMPELLING GOOGLE, LLC'S COMPLIANCE WITH SUBPOENA** |

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE AND FOR ORDER COMPELLING GOOGLE, LLC TO COMPLY WITH SUBPOENA

Plaintiffs Europlay Capital Advisors, LLC ("ECA") and Mark Dyne ("Dyne") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their Application for an Order to Show Cause and for an Order Requiring Compliance by Google, LLC ("Google") with a subpoena, together with the accompanying Declarations of James A. Sedivy ("Sedivy Decl.") and Nicholas Poore ("Poore Decl.").

## I. INTRODUCTION

Plaintiffs' email server and accounts were hacked by unknown persons who gained access to Plaintiffs' bank accounts obtaining highly confidential and proprietary information, customer lists and financial information relating to Plaintiffs. On April 14, 2017, Plaintiffs filed their complaint in the Central District of California against John Does 1-10 ("Defendants") based upon: (1) violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030, et seq.); (2) violation of Federal eavesdropping statutes 18 U.S.C. §§ 2511 & 2520; (3) violation of California Penal Code § 502(c); and (4) violation of Economic Espionage Act 18 U.S.C. § 1832 et seq. (The "Central District Action" Case No. 2:17-cv-02856-CAS-ASx; Sedivy Decl. ¶ 2.)

On April 19, 2017, in the Central District Action, Plaintiffs filed an unopposed ex parte application to conduct expedited discovery (the "Ex Parte Application") from (i) Microsoft Corporation ("Microsoft") regarding the Microsoft email address, "rdorsey.wsandco@outlook.com" (the "Subject Outlook Account"); and (ii) Google, regarding the Google email address, "alain.quaireau.kiade@gmail.com" (the "Subject Gmail Account"). (Sedivy Decl. ¶ 3; Exhibit 1.)

As set forth in the Ex Parte Application, during the period of April 6-8, 2017, Mr. Dyne and his IT consultant, Nicholas Poore, discovered that Mr. Dyne's ECA email account had been hacked and three new "Inbox Rules" had been created in

Mr. Dyne's Mailbox. Inbox Rules allow a person to set up guidelines for automatically organizing email when it arrives. (Poore Decl. ¶¶ 3, 4; Exhibit 1.)

The three new Inbox Rules that were added purposefully attempted to hide critical emails from Mr. Dyne and his assistant at ECA, Ms. Mandel, and additionally sent a secret copy of all emails he received to an outside email address. Those actions were not authorized by Mr. Dyne or ECA. (Poore Decl. ¶ 4.)

One of the new Inbox Rules forwarded all messages coming to Mr. Dyne's ECA email account to the Subject Gmail Account. (Poore Decl. ¶ 8.)

The other new Inbox Rules were applied to Mr. Dyne and Ms. Mandel's ECA email accounts which took all emails that came from "@wsandco.com" (Mr. Dyne and ECA's insurance agent) and marked them as "read", and then moved them to mail folder called "RSS Feeds 1". By marking them as "read" it stopped the "unread emails" counter from increasing – which is a simple notification that people use to figure out that they have new email. By moving the message into the "RSS Feeds 1" folder, it removed the email from the Inbox – meaning that it was no longer showing in the list. (Poore Decl. ¶ 6.)

The unknown Defendants' unlawful conduct has resulted in the unauthorized access, use, disclosure, and dissemination of Plaintiffs' confidential information to unknown individuals and/or entities who could obtain substantial economic benefits from the use of such confidential information.

As noted in the Ex Parte Application, the confidential information contained in the emails may continue to be used by the unknown defendants which subjects Plaintiffs to additional damage. (Sedivy Decl. ¶ 3; Exhibit 1, p. 7:4-7.) Thus, Plaintiffs need to determine exactly what information has been taken as well as the identity of those who may have that information.

On April 26, 2017, the court in the Central District Action granted Plaintiffs' application to conduct expedited discovery from Microsoft and Google. (Sedivy

Decl. ¶ 4.)

On April 28, 2017, Plaintiffs served Google and Microsoft with subpoenas requesting documents and information that will disclose the identities of those who have illegally accessed Plaintiffs' computers and the confidential information contained therein and to stop Defendants' use, disclosure and misappropriation of Plaintiffs' confidential information. (Sedivy Decl. ¶5; Exhibits 2, 3.)

The Google subpoena was served on Google's registered agent for service of process, Corporation Service Company. The Google subpoena commended Google to produce documents at the offices of Stubbs Alderton & Markiles, LLP in Sherman Oaks, California. (Sedivy Decl. ¶7.)

After initially refusing to produce any information Google eventually produced a list of 12 login/log out IP addresses during the period of February 16, 2017, to April 27, 2017. Using IP Location Finder, we have determined that eight of the IP addresses are located in Logos, Nigeria (7 login and 1 log out); three of the IP addresses are located in Nairobi, Kenya (all login) and one IP address is located in New York City (logout). (Sedivy Decl. ¶ 9; Exhibit 8.) Google also provided the email subscriber's name, Alain Quaireau Kiade, which Plaintiffs believe is an alias. A Google search of "Alain Quaireau Kiade" shows that Alain Quaireau is co-manager for Kiade Maquettes, a motor boat manufacturer located in France. (Sedivy Decl. ¶ 9; Exhibit 9.) Google also provided the non-content email header information of over 690 emails sent from "mdyne@ecamail.com" to the Subject Gmail Account from March 28, 2017, to April 6, 2017, a total of 9 days (the "Subject Emails"). The actual email message contained in all of the Subject Emails was not produced by Google. (Sedivy Decl. ¶ 9; Exhibit 4.)

Plaintiffs have requested that Google produce the email messages contained in the Subject Emails, but Google has refused to do so. Plaintiffs bring this application for an order to show cause to compel Google to produce those email

messages.

Plaintiffs filed a motion in the Central District Action to compel Google to produce the email messages contained in the Subject Emails. On February 5, 2018, the motion was denied without prejudice on the grounds that the proper court to hear the motion was the Northern District of California, where Google is headquartered. (Sedivy Decl. ¶ 15; Exhibit 8, Docket No. 23.)

Counsel for Plaintiffs and counsel for Google have met and conferred on multiple occasions from the end of November 2017 through the beginning of January 2018, regarding Google's refusal to produce the email messages contained in the Subject Emails as required by N.D. Cal. Local Rule 37-1(a) and Fed. R. Civ. P. 37. (Sedivy Decl. ¶¶ 10-14; Exhibits 5-7.)

## II. THIS COURT HAS THE AUTHORITY TO ENFORCE THE SUBPOENA

This Court should issue an order requiring Google to show cause why it should not be held in contempt of Court for failure to comply with a valid subpoena and order Google to comply with the subpoena and be compelled to produce the email messages.

A subpoena is an order of the court. See *Young v. United States*, 481 U.S. 787, 821 (1987) (Scalia, J., concurring) (noting that courts are empowered to prosecute for contempt "those who . . . disobey orders necessary to the conduct of . . . business (such as subpoenas)."); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340 (8th Cir. 1975) ("A subpoena is a lawfully issued mandate of the court issued by the clerk thereof."). A witness, therefore, can be held in contempt of court for failing to comply with a subpoena. Rule 45(g) expressly provides that "the court for the district where compliance is required …may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." (Fed. R. Civ. P. 45(g).)

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE AND FOR ORDER COMPELLING GOOGLE, LLC TO COMPLY WITH SUBPOENA

## III. ISSUES IN DISPUTE

### A. Document Request and Response At Issue.

REQUEST FOR PRODUCTION NO. 9.:

All COMMUNICATIONS[1] from Mark Dyne, Europlay Capital Advisors, LLC, ecamail.com, Angela Mandel, Ryan Dorsey, Woodruff-Sawyer & Company, any local name @ecamail.com, or any local name @wsandco.com., to the SUBJECT EMAIL ADDRESS.[2]

RESPONSE TO REQUEST FOR PRODUCTION NO. 9.:

In response to Request No. 9, Google produced non-content email header information of over 690 emails sent from mdyne@ecamail.com to the Subject Gmail Account from March 28, 2017, to April 6, 2017, a total of 9 days. The actual email message contained in all of those emails was not produced by Google. A sample of the non-content email header information produced by Google is attached as Exhibit 4. (Sedivy Decl. ¶ 9.)

### B. The Stored Communications Act Permits the Production of Subpoenaed Documents.

Google needs to produce the actual email message contained in the Subject Emails. Google contends that it is prohibited from producing such email messages pursuant to the mandate of 18 U.S.C.A. § 2702 (a). Plaintiffs contend that the exceptions to 18 U.S.C.A. § 2702 (a), set forth in 18 U.S.C.A. § 2702 (b) apply and permit Google to produce the actual email messages. These exceptions allow for the

---

[1] COMMUNICATIONS is defined as "any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, or question by any medium, whether by written, oral or other means, including but not limited to electronic COMMUNICATIONS, recordings and e-mail."

[2] The SUBJECT EMAIL ADDRESS is defined as "the Google email address alain.quaireau.kiade@gmail.com."

production of email messages (i) to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient; or (ii) with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service. (18 U.S.C.A. § 2702 (b)(1) and (3).)

The exception set forth in 18 U.S.C. §2702(b)(1) is applicable to this case as it permits Google to divulge the contents of a communication to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient. These emails are between Mr. Dyne and the Subject Gmail Account with both email addresses appearing on those emails. This exception does not require the consent of the account holder(s) of the Subject Email Address.

All of these emails were addressed to Mr. Dyne's ECA email account and were wrongly forwarded to the Subject Gmail Account. (Poore Decl. ¶ 8.) Therefore, Mr. Dyne was an addressee of the Subject Emails and the exception of section 2701(b)(1) of the SCA applies.

The exception set forth in 18 U.S.C. §2702(b)(3) is also applicable and permits Google to divulge the contents of a communication with the lawful consent of the originator of the emails. Plaintiffs' subpoena to Google requesting the production of is a consent by Plaintiffs for the production of any such emails that they originated. By issuing the subpoena, Plaintiffs are clearly consenting to Google producing such documents and the exception of section 2701(b)(3) of the SCA applies. It would be absurd for Plaintiffs to request such documents and then claim that they did not consent to such a production.

Google has even argued that Plaintiffs have not offered proof that they own the originator email account. Google had no such concerns when it produced documents pursuant to the subpoena. Further, the declarations submitted with the Ex Parte Application of Mr. Dyne (¶ 3), Mr. Poore (¶ 3) and Ms. Mandel (¶ 2) show

that ECA is the owner of the email account of mdyne@ecamail.com. (Exhibit 1.) A copy of the ICANN Whois records shows that Plaintiff ECA is the registrant of "ecamail.com." (Sedivy Decl. ¶ 16; Exhibit 9.)

The lack of merit of Google's refusal to produce the messages of the Subject Emails is highlighted by the fact that a similar document request was served on Microsoft for the production of emails between Mr. Dyne and others at ECA on the one hand, and the Subject Outlook Account, on the other hand. Microsoft did produce the actual email messages for those communications, unlike Google. (Sedivy Decl. ¶ 6.)

Google has argued that the exceptions of the SCA are not mandatory, but discretionary to Google, because the statute uses the word "may." These are the same arguments made by Google that were rejected by the court in *Negro v. Superior Court,* 230 Cal.App.4th 879, 899-904 (2014). As noted by the court in *Negro,* "In sum, we find no basis for the proposition that the Act [SCA] empowers service providers to defy civil subpoenas seeking discovery of materials that are excepted from the Act's prohibitions on disclosure." (*Id.* at p. 904.) Google does not have the discretion to refuse to produce documents that come within the exceptions of the SCA.

### C. The IP Addresses Do Not Identify the Doe Defendants and Plaintiffs Cannot Obtain the Subject Emails From the Hackers

Google has argued that Plaintiffs should get the contents of the Subject Emails from those who hacked Plaintiffs' email accounts. Plaintiffs do not know the true name and valid contact information for the account holder of the Subject Gmail Account is, and Google has not provided any physical address for that person claiming that it does not have that information. (Sedivy Decl. ¶ 11.)

Google has further argued that an Internet Protocol ("IP") address will identify the person behind the hacking. This is not correct. An IP address can help identify the internet provider and a geographical location. Here, eleven of the

7

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE AND FOR ORDER COMPELLING GOOGLE, LLC TO COMPLY WITH SUBPOENA

twelve IP Addresses provided by Google are located in Nigeria and Kenya. (Sedivy Decl. ¶ 9.) The IP address does not provide the identification of the subscriber to the internet provider. Even if the foreign internet provider where to provide the identity of its subscriber, if the subscriber is a company with multiple employees or a family with several members, it is impossible to identify the person who logged in or out of an email account at a given time.

### D. Producing the Subject Emails Will Confirm the Information Illegally Obtained By the Doe Defendants.

Google has argued that the <u>only</u> reason Plaintiffs are seeking the Subject Emails from Google is to obtain the identity of those who hacked Plaintiffs' email account. As set forth in the Ex Parte Application, in addition to identifying the hacker, Plaintiffs also need to know what emails were actually received by the hackers so that they can attempt to limit the improper use of that information and minimize the damage to Plaintiffs. (Exhibit 1.)

There is no record in Mr. Dyne's mailbox that any of these emails were forwarded to the Subject Gmail Account as none of these emails appear in his list of "Sent Items." (Poore Decl. ¶ 10.) The email header information provided by Google does not help Plaintiffs identify the specific emails as there is no "subject" noted in the header information. The email header information only lists the date and time that an email was sent from Mr. Dyne's email account to the Subject Gmail Account. (Poore Decl. ¶ 11.)

Even though the Inbox Rules were supposed to forward all emails from Mr. Dyne's email account to the Subject Gmail Account, Plaintiffs cannot determine what actually was forwarded. Google, like most email providers, provides some level of email filtering, so that even if an email message was sent, we cannot determine if it was received. The only way to determine what email messages were received is to review a copy of the actual message of each email received by the

Subject Gmail Account. (Poore Decl. ¶ 12.)

The only way to confirm the full scope of the confidential information of the Plaintiffs that has been obtained by the unknown defendants is to confirm the exact email messages that were received by the Subject Gmail Account. This can only be accomplished by Google producing the messages of the Subject Emails.

### E. Producing the Subject Emails is Not Burdensome on Google.

The Subject Emails cover a span of only nine (9) days. Google has already produced the header information of the Subject Emails. Google obviously have the Subject Emails and are simply refusing to hand them over to Plaintiffs. Producing the actual messages will not significantly add to the work Google has already performed. Thus, for a company the size of Google to argue that the production of the messages of the Subject Emails is burdensome, is not well taken.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs request this Court to enter an Order to Show Cause, directing Google to show cause why this Court should not enter an Order directing Google to produce the email messages contained in the Subject Emails and thereafter enter an order requiring Google to produce the email messages contained in the Subject Emails.

DATED: March 6, 2018

Stubbs Alderton & Markiles, LLP

By: _____
Jeffrey F. Gersh
James A. Sedivy
Attorneys for Plaintiffs
Europlay Capital Advisors, LLC, and
Mark Dyne

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403.

On March 6, 2018, I served the foregoing documents described as: **PLAINTIFFS EUROPLAY CAPITAL ADVISORS AND MARK DYNE'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER COMPELLING GOOGLE LLC's COMPLIANCE WITH SUBPOENA** on all interested parties to this action by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

Julie Schwartz
Christian Lee
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Counsel for Non-party Google LLC
jschwartz@perkinscoie.com
clee@perkinscoie.com

☒ **BY E-MAIL:** I caused the above-referenced document to be transmitted via e-mail from hcory@stubbsalderton.com to jschwartz@perkinscoie.com

☒ **(BY MAIL)** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with STUBBS ALDERTON & MARKILES LLP practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Sherman Oaks, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 6, 2018, at Sherman Oaks, California.

_____
HEATHER CORY