1  Julie E. Schwartz, Bar No. 260624
   JSchwartz@perkinscoie.com
2  Christian Lee, Bar No. 301671
   CLee@perkinscoie.com
3  PERKINS COIE LLP
   3150 Porter Drive
4  Palo Alto, CA  94304-1212
   Telephone: 650.838.4300
5  Facsimile: 650.838.4350

6  Attorneys for Non-party
   Google LLC
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12 | EUROPLAY CAPITAL ADVISORS, LLC, a Delaware limited liability company; MARK DYNE, an individual, | Case No. 5:18-MC-80044-SVK
13 | | **NON-PARTY GOOGLE LLC'S RESPONSE TO APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER COMPELLING GOOGLE, LLC'S COMPLIANCE WITH SUBPOENA**
14 | Plaintiffs, |
15 | v. |
16 | DOES 1 through 10, inclusive, | Date: April 17, 2018
   |                              | Time: 10 a.m.
17 | Defendants. | Dept.: 5 (4th Floor)
   |              | Judge: Hon. Susan van Keulen

## I. INTRODUCTION

Plaintiffs' Application for an Order to Show Cause and for an Order Compelling Google, LLC's ("Google") Compliance with Subpoena ("Application") to produce copies of emails that were sent to and received by Plaintiffs, and then automatically forwarded from Plaintiffs' email account to a Gmail account, should be denied for three independent reasons.

First, copies of emails automatically forwarded from Plaintiffs' account to the Subject Gmail Account[1] will not help them identify their Doe defendant, the stated purposed of their discovery, and Google has already produced to them information that could.  Second, Plaintiffs already have the emails in question—they are those sent to Plaintiffs which were then automatically forwarded to the Subject Gmail Account—and they can use information from Google's production to determine which ones were forwarded.  Third, to the extent Plaintiffs need copies of the emails for another reason, the Stored Communications Act ("SCA") prohibits Plaintiffs from seeking them from Google.  Instead, the proper course is for Plaintiffs to identify their Doe defendant and then seek the content of the Subject Gmail Account directly from them.

Plaintiffs argue they are entitled to compel Google to produce the content of the Subject Gmail Account under two exceptions to the SCA.  As an initial matter, even if either exception applied, it would merely *allow* Google to produce copies of email but would not *require* it. Further, neither exception applies in any event—Plaintiffs are not an "addressee or intended recipient" of the emails in the Subject Gmail Account (they are the originator because their account forwarded the emails to the Subject Gmail Account) and Plaintiffs cannot prove sufficient lawful consent to compel disclosure of email stored in the Subject Gmail Account.

At bottom, Google received and timely objected to the subpoena, produced responsive information that the SCA did not prohibit it from disclosing and that would help Plaintiffs identify their Doe defendant, and cannot otherwise be compelled to disclose copies of emails sent to Plaintiffs and then automatically forwarded to the Subject Gmail Account.  Although it is unfortunate that Plaintiffs have not yet been able to identify their Doe defendant and prosecute

---

[1] This is defined in the subpoena to be alain.quaireau.kiade@gmail.com, the Gmail account for which the subpoena seeks information.

their case against them, that does not justify the end-run on federal law that Plaintiffs propose. Moreover, in light of Google's meritorious objections, Plaintiffs' suggestion for contempt proceedings is baseless and wholly inappropriate. The Application should be denied.

## II.  STATEMENT OF FACTS

On April 27, 2017, Plaintiffs issued a subpoena to Google seeking emails and logging and identifying information for the Subject Gmail Account. Declaration of James A. Sedivy in Support of Application ("Sedivy Decl."), Ex. 2. Google timely objected to Plaintiff's subpoena on the basis that, among other things, Plaintiffs should direct their discovery requests to the Gmail user as the putative defendant, and the SCA does not allow private parties to compel production of email content from Google. Declaration of Christian Lee in Support of Google's Response to Application ("Lee Decl."), Ex. A. Google offered to produce non-content information, such as subscriber information and IP addresses, consistent with the SCA. *Id.*

On June 2, 2017, counsel for Google telephonically met and conferred with counsel for Plaintiffs to discuss the subpoena, and explained that Google could produce non-content information including IP addresses to Plaintiffs, who could then subpoena the Internet Service Provider ("ISP") that issued the IP addresses for the user's identifying information. *Id.* ¶ 3. Then, Plaintiffs could conduct discovery directly from the identified Doe defendant. *Id.*

On June 28, 2017, Google electronically produced subscriber information, IP logs, and non-content email headers to Plaintiffs. *Id.* ¶ 4. The headers contain email metadata such as the message-ID, SMTP id, ESMTPS id, time and date stamp, sender, and recipient information. *See* Sedivy Decl., Ex. 4.

Google heard nothing from Plaintiffs for almost six months until November 22, 2017, when Plaintiffs sent a letter disputing Google's production and demanding email content from Google. Google reiterated that Plaintiffs should use the IP addresses produced by Google to identify the ISP who assigned that IP address, and then to subpoena the ISP for the name and address of the person who was assigned that IP address. Lee Decl., ¶ 5. Plaintiffs refused to do so, and the parties were unable to resolve Plaintiff's renewed request for emails. *Id.*

### III. ARGUMENT

Plaintiffs' Application should be denied for three reasons: (1) copies of emails that were sent to Plaintiffs will not help them identify their Doe defendant, the stated purpose of their discovery; (2) they already possess all the emails that they seek from Google, and they have Google's production of the header records of the emails that were forwarded; and (3) the SCA requires that they seek copies of email stored in a Gmail account directly from the user, and any disclosure pursuant to exceptions to the SCA are discretionary and do not apply here.

#### A. The Emails Will Not Help Plaintiffs Identify the Doe Defendants.

Copies of emails sent to Plaintiffs and automatically forwarded to the Subject Gmail Account will not help Plaintiffs identify their Doe defendant, the stated purpose of their discovery to Google. Plaintiffs' expedited discovery order is not a free hand to conduct unlimited and improper discovery. This Court strictly construes the scope of expedited discovery to information necessary to identify a defendant, and should deny the Application on this basis alone. *See, e.g.*, *Assef v. Does 1-10*, No. 15-CV-01960-MEJ, 2015 WL 3430241, at *3 (N.D. Cal. May 28, 2015) (limiting subpoena to Google "for expedited discovery of Defendants' names, addresses, telephone numbers, and email addresses, as well as the IP address used to create the Blog, but not other documents "relating to" Defendants"); *Ebates, Inc. v. Does*, No. 16-CV-01925-JST, 2016 WL 2344199, at *3 (N.D. Cal. May 3, 2016) (limiting expedited discovery to subpoena that is "specific, targeted, and very limited," and "requests information designed to help identify the relevant individuals, such as the IP addresses and other identifying information associated with the relevant accounts"); *InDistinct Media Ltd. v. Doe Defendants 1-50*, No. 15-CV-03312 NC, 2015 WL 13389609, at *4 (N.D. Cal. Sept. 29, 2015) (denying proposed expedited discovery subpoenas where subpoenas not "narrowly tailored" "to identifying information related to two websites"); *Dhillon v. Does 1–10*, No. C 13-1465 SI, 2013 WL 5367783, at *2 (N.D. Cal. Sept. 25, 2013) (limiting expedited discovery subpoena to Google only for "documents sufficient to identify the account information for the [Gmail addresses] including the name, address and telephone number of the owner(s) of these email addresses and the IP address(es) from which the user(s) created the account and signed in and signed out, with dates and times").

Here, Plaintiffs have repeatedly represented to the court where the matter is pending that the subpoena was issued to identify the Gmail user so they could be named as a defendant. *See, e.g.*, Lee Decl., Ex. B (Compl.) ¶ 4 ("The true names and capacities of the Defendants cannot be ascertained until Plaintiffs can subpoena email records, and other ***identifying information***[.]") (emphasis added); Sedivy Decl., Ex. 1 at 7 ("[T]he only way for Plaintiffs to ***determine the identities of the Doe Defendants*** is to conduct discovery from … Google, Inc., and possibly others.") (emphasis added); Lee Decl., Ex. C ¶ 2 ("In an effort to ***identify the Doe Defendants***, Plaintiff[s] have served subpoenas on . . . Google") (emphasis added); *id.* ¶ 5 (claiming that subpoena was issued to Google for "records that ***may contain the identity*** of the person(s) us[ing]" the Gmail account) (emphasis added); *id.* ¶ 17 (requesting the Court not to dismiss the action because Plaintiffs were "***continuing their efforts to identify*** the person(s) who have illegally accessed their computer server") (emphasis added); *id.*, Ex. D ¶ 2 ("In an effort to ***identify the Doe Defendants***, Plaintiffs have served subpoenas on . . . Google") (emphasis added); *id.* ¶ 7 ("Plaintiffs are ***continuing their efforts to identify*** the person(s) who have illegally accessed their computer server.") (emphasis added).

But the emails that Plaintiffs seek are emails that were sent to Plaintiffs and then automatically forwarded to another email account. Obviously, copies of Plaintiffs' own emails will not help Plaintiffs identify the Doe defendant. Indeed, the only information from Google that could possibly help is the subscriber information, IP addresses associated with logins and logouts from the Subject Gmail Account, and header information, all of which were produced by Google nearly ***nine months*** ago. Lee Decl. ¶ 4.

Courts have repeatedly recognized that this is the normal course of discovery to identify a Doe defendant—obtain the basic identifying information and IP addresses from a provider such as Google, and then pursue information about the IP addresses from the relevant internet service provider. *See, e.g., PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 273 F. Supp. 3d 558, 561 (W.D. Pa. 2017) ("PPG could uncover the identity of the individual(s) accessing the accounts by issuing subpoenas for non-content information (like IP addresses) to the appropriate parties. Once the identity of the individual(s) was uncovered, PPG could then ask the individual(s) for access to

the emails."); *Ingenuity13 LLC v. Doe*, No. 12–CV–1843–MMA (JMA), 2012 WL 4108885, at *2 (S.D. Cal. Sept. 17, 2012) (describing process of using publicly available reverse-lookup databases on the Internet to identify the ISP associated with an IP address in order to issue a subpoena for the user's name and address). As this Court has explained, the proper procedure is to "serve Rule 45 subpoenas on the ISPs [who "assign a unique IP address to individual users"] . . . to obtain information to identify each Doe Defendant, including the name, address, telephone numbers, email addresses, and media access control information." *Pink Lotus Entm't, LLC v. Does 1-46*, No. C-11-02263 HRL, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011). Google is not the ISP or otherwise the appropriate target for Plaintiffs' discovery.

Rather than pursue that course, as Google suggested numerous times during meet and confers, Plaintiffs have apparently conducted only Google searches and IP lookups, and then stopped there. Appl. at 7-8. Indeed, they admitted they have not issued a single subpoena to identify the user behind the IP addresses produced by Google. Lee Decl. ¶ 5. And again, copies of Plaintiffs' own emails will not enable them to identify their Doe defendant.

Acknowledging this, Plaintiffs now argue that they need to "confirm" the scope of their confidential information sent to the Google account. Appl. at 8-9. That is putting the cart before the horse: Plaintiffs need to identify their Doe defendant first. Anything else is premature,[2] outside the scope of discovery as explained above, and in this case, barred by the SCA.

**B.   Plaintiffs Already Possess the Emails They Seek to Compel from Google.**

The only emails sought by Plaintiffs are emails which they admit they already have in their possession. However, a party is not entitled to discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2). Further, a subpoena cannot impose "undue burden or expense on a person subject to the subpoena." *Id*. 45(d). Here, Plaintiffs have conceded they already have the emails sought from Google. Lee Decl., Ex. E ("There was a rule enabled on [Plaintiff's] Inbox that forwarded a COPY of all emails to the [G]mail account.") (emphasis in

---

[2] In any case, as explained below, Google produced headers to Plaintiffs, and they can use this to "confirm" which emails were sent to and received by the Subject Gmail Account.

1  original); Declaration of Nicholas Poore In Support of Application ("Poore Decl.") ¶ 8 ("This rule
2  took *a copy* of each and every new email arriving in [Plaintiff's] Inbox and secretly sent it[.]")
3  (emphasis added); *id.* ¶ 12 ("[T]he Inbox Rules were supposed to *forward all emails* from
4  [Plaintiff's] email account to the Subject Gmail Account.") (emphasis added).  Therefore, seeking
5  copies of them from Google is unduly duplicative and burdensome.

6        Non-party discovery is not available to obtain copies of Plaintiffs' own emails or to
7  confirm the completeness of party discovery.  *See, e.g.*, *Mintz v. Mark Bartelstein & Assocs., Inc.*,
8  885 F. Supp. 2d 987, 993 (C.D. Cal. 2012) ("Defendants would already have possession of the
9  text messages and would not need to subpoena them."); *Musarra v. Digital Dish, Inc.*, No. 2:05-
10  CV-545, 2008 WL 4758699, at *3–4 (S.D. Ohio Oct. 30, 2008) (rejecting plaintiff's request for
11  non-party discovery to "compare[] and contrast[]" with defendants' production); *Haworth, Inc. v.*
12  *Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (similar).

13        Plaintiffs admit they seek a production from Google to confirm "what email messages
14  were received by the Subject Gmail Account."  Poore Decl. ¶ 12.  However, the non-content
15  email headers produced by Google, which contain the emails' unique metadata (such as message-
16  ID, SMTP id, ESMTPS id, time and date stamp, sender, and recipient), are sufficient to help
17  Plaintiffs identify which emails were forwarded from their accounts to the Subject Gmail
18  Account.  *See* Sedivy Decl., Ex. 4.  Plaintiffs can simply compare the metadata for the emails
19  they have in their possession with those in Google's header production.   Although Plaintiffs may
20  believe it would be easier to compare with copies of the actual emails, confirming what messages
21  were actually received does not help them identify their Doe defendant, is premature, and as
22  described in the next section, requires an end-run on federal law.

23        **C.**    **Under the SCA, Plaintiffs Should Direct Their Request to the Gmail Account**
24                **Holder and Google Cannot be Compelled to Produce the Account's Content.**

25        The SCA provides that to obtain the content of a person's email account, the party should
26  direct their request to the user, not the provider of the email service.  *See*, *e.g.*, *Suzlon Energy Ltd.*
27  *v. Microsoft Corp.*, 671 F.3d 726, 731 (9th Cir. 2011) (holding under the SCA that the inability to
28  obtain email content from service provider does not affect ability to obtain documents directly

from account holder); *Nucci v. Target Corp.*, 162 So. 3d 146, 155 (Fla. App. 4 Dist. Jan. 7, 2015) (upholding a discovery order compelling plaintiff to produce the content of his Facebook account and noting that the "SCA prevents 'providers' of communication services from divulging private communications to certain entities and/or individuals.").

Although Plaintiffs have been unable to identify their Doe defendant thus far, they should continue to try to do so and, once identified, seek the copies of emails from that person directly, as provided under the SCA. Indeed, Plaintiffs concede that the SCA applies to Google and the emails in question, and that Google is prohibited from disclosing the emails. *See* Appl. at 5-6; 18 U.S.C. § 2702(a) (prohibiting disclosure of stored content by a service provider). But they argue that this matter fits within two exceptions to this prohibition—one which allows disclosure to "an addressee or intended recipient of such communication" and one that allows disclosure "with the lawful consent of the originator or an addressee or intended recipient of such communication." 18 U.S.C. § 2702(b)(1), (3). This argument fails for two reasons: (1) any disclosure by a service provider pursuant to an exception under the SCA is at the provider's discretion and cannot be compelled by Plaintiffs and (2) neither of the claimed exceptions applies here in any event.

### 1. Google Cannot be Required to Produce the Email Content.

The exceptions that allow a service provider to disclose the content of emails are discretionary, not mandatory, and even if one applied, Google could not be compelled to disclose email. Section 2702(b) of the SCA, which lists the exceptions that Plaintiffs rely upon, states that a service provider "may divulge the contents of a communication" if an exception is met. 18 U.S.C. § 2702(b). "May" is permissive and implies discretion. *See United States v. Rodgers* 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."). Accordingly, courts around the country and in this district hold that "[u]nder the plain language of Section 2702, while consent may *permit* production by a provider, it may not *require* such a production." *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (Grewal, Mag. J.) (emphasis in original); *Dunbar v. Google, Inc.,* No. C 12-3305 LHK (N.D. Cal. Jan. 8, 2013), ECF No. 244 ("[E]ven if Dunbar were only seeking production of the email communications in which he was the 'originator' (for which a voluntary exception could apply

under 18 U.S.C. § 2703(b)(3)), Google may not be compelled to produce the emails and associated metadata that it maintains in electronic storage subject to the Stored Communications Act."); *PPG Industries*, 273 F. Supp. 3d at 561 ("[A]ccording to the language of the SCA, it is within the providers' discretion whether to disclose e-mails even in cases where there is lawful consent."); *Schweickert v. Hunts Point Ventures, Inc.*, No. 13–cv–675RSM, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014) ("Even if the Court could compel Plaintiff to consent to the disclosure of some her emails under Rule 34, the providers would still only be permitted, but not required, to turn over the contents under 18 U.S.C. § 2702(b)(3) . . . . It would still remain within the providers' discretion to respond."); *State v. Bray*, 383 P.3d 883, 891 (Or. Ct. App. 2016), *review allowed*, 361 Or. 543 (2017); 361 Or. 543 (2017) (noting that "under [the] plain language of 18 USC § 2702(b), disclosure pursuant to exception is discretionary").

Plaintiffs' reliance on *Negro v. Superior Court*, 230 Cal. App. 4th 879, 889-904 (2014) to support that "may" is compulsory is misplaced. Appl. at 7. First, *Negro* is not binding. Second, its persuasive value is limited because it is the only court, as far as Google is aware, to hold that "may" does not necessarily confer discretion, which is contrary to complete agreement among federal courts as noted above. Third, *Negro*'s holding is limited to (1) only ***permitting***—not requiring—a court to compel disclosure, (2) when warranted under ***state law***; and (3) only after a court finds that a user has ***expressly consented***. 230 Cal. App. 4th at 904 ("Insofar as the Act permits a given disclosure, it ***permits*** a court to compel that disclosure under ***state law***. It follows that when a user has ***expressly consented*** to disclosure, the Act does not ***prevent*** enforcement of a subpoena seeking materials in conformity with the consent given.") (emphasis added).

Therefore, even if Plaintiffs could satisfy one of the exceptions listed in section 2702(b) (which they cannot for the reasons discussed next), Google cannot be compelled to produce copies of emails because the SCA does not authorize compelled disclosure.[3]

---

[3] Contrary to Plaintiffs' suggestion, Appl. at 6, the SCA authorizes the production of ***non-content*** information such as subscriber information, IP addresses, and email headers, which Google already produced nine months ago. *See, e.g.*, *Lucas v. Jolin*, No. 1:15-CV-108, 2016 WL 2853576, at *5 (S.D. Ohio May 16, 2016) ("Nevertheless, an electronic communication service provider may release subscriber information that is not considered "content" under 18 U.S.C. § 2702(c)(6).")

### 2. Neither of the Exceptions that Plaintiffs Rely Upon Applies.

#### a. Section 2702(b)(1) Does Not Apply.

The exception in section 2702(b)(1) of the SCA allows a provider to disclose the contents of a communication "to an addressee or intended recipient of such communication or agent of such addressee or intended recipient." This does not apply because Plaintiffs are not an "addressee" or "intended recipient" of the communications at issue; instead, they sent the emails to the Subject Gmail Account. Appl. at 5 (claiming that Google's production consists of 690 emails "sent from" Plaintiffs to the Subject Gmail Account). Accordingly, for purposes of the SCA, Plaintiffs are an "originator" of the messages, not an addressee or intended recipient. *See, e.g.*, *Mintz*, 885 F. Supp. 2d at 993 (distinguishing between "originator," "addressee," and "intended recipient"); *In re Facebook Privacy Litig.*, No. C 10-02389 JW, 2011 WL 6176208, at *1 (N.D. Cal. Nov. 22, 2011) (describing recipient of communications as being an "addressee or intended recipient"), *rev'd in part on other grounds,* 572 F. App'x 494 (9th Cir. 2014).

#### b. Plaintiffs Have Not Met the Requirements of Section 2702(b)(3).

The exception in section 2702(b)(3) of the SCA allows a provider to disclose the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication." Although this does allow the originator of an email (such as Plaintiffs here) to provide lawful consent to disclosure, Plaintiffs have not done so. Plaintiffs argue that their subpoena to Google suffices as "a consent by Plaintiffs for the production of any such emails they originated." Appl. at 6. Plaintiffs also proffer an internet printout showing that the corporation Plaintiff is the registrant of the domain for the originator account. *Id.* at 6-7. The exception in Section 2702(b)(3), however, "is not satisfied by consent that is merely constructive, implied in law, or otherwise imputed to the user by a court." *Negro*, 230 Cal. App. 4th at 889; *Suzlon*, 671 F.3d at 731 (holding that a "supposed implied consent argument has no bearing on . . . efforts to get those emails from [the provider], who is not a party to the litigation"). In *Negro*, the court addressed the consent exception in the context of a Google account and concluded that lawful consent required access to the account in question and being able to send a communication

to Google from the account. 230 Cal. App. 4th at 889. Plaintiffs' internet printout shows that they registered the domain, but does not show they own or control the particular originator email account[4] or that the actual account holder consents to disclosure. And even if they could, seeking copies of the emails from Google would remain unduly burdensome and duplicative for the reasons above. The Application should therefore be denied.

### D. Plaintiffs' Suggestion that Google Should Be Held in Contempt Is Meritless.

Plaintiffs are wrong to suggest that Google should "be held in contempt of court for failing to comply with a subpoena." Appl. at 4. Rule 45(g) provides that a person can be held in contempt when he "fails without *adequate excuse* to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g) (emphasis added). Here, Google timely served written and valid objections, Lee Decl., Ex. A, which excuses Google's compliance. *In re Plise*, 506 B.R. 870, 878 (B.A.P. 9th Cir. 2014) (holding that "[w]ritten [o]bjections to the subpoenas in accordance with [former] Civil Rule 45(c)(2)(B) . . . qualifies as an "'adequate excuse.'") (citation omitted); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492, 494 n. 5 (9th Cir.1983) (holding that "a subpoena duces tecum is itself a court order, and noncompliance may warrant contempt sanctions," but noting that when the person subpoenaed serves written objections, "the party seeking discovery must obtain a court order directing compliance" before contempt will be available). Any request for contempt therefore is baseless and should be denied.

### IV. CONCLUSION

For the aforementioned reasons, Google requests that this Court deny Plaintiffs' Application and quash Plaintiffs' subpoena.

---

[4] And as a practical matter, it would be difficult for Google to verify ownership and consent for a non-Gmail account, such as Plaintiffs' email account here. Because Google is not the provider for the non-Gmail account, there are numerous ways to spoof or fake an email from an external email account, and Google cannot be expected to be able to verify identity and consent for any email system from which a purported consent email might be sent.

1 | DATED: March 20, 2018 | **PERKINS COIE LLP**

By: _____*/s/ Christian Lee*_____
       Christian Lee

Attorneys for Non-party Google LLC


## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury, under the laws of the United States, that a true and correct copy of the above and foregoing document has been served on March 20, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

Dated:  March 20, 2018

*/s/ Christian Lee*
Christian Lee